UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ROBERT ALLEN and DAWN ALLEN,           )
Individually and as Best Friend and Guardian   )
of R.A., a minor,                      )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )        No. 3:22-CV-403-KAC-DCP
                                       )
CAM'S TRANSPORT COMPANY,               )
and PIERCE COLLINS,                    )
                                       )
        Defendants.                    )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the Motion to Enlarge and Reopen Discovery and Compel Production of Late-Filed Deposition Exhibits with Incorporated Memorandum of Law ("Motion to Compel") [Doc. 68] and the related Motion for Sanctions for Spoliation of Evidence ("Motion for Sanctions") [Doc. 69], filed by Plaintiffs Robert Allen ("Mr. Allen") and Dawn Allen ("Mrs. Allen"), individually and as best friend and guardian of R.A., a minor, (together "Plaintiffs"). Additionally, before the Court is the Motion to Reopen Discovery for Limited Purpose of Obtaining Plaintiffs' Medical Records ("Motion to Obtain Plaintiffs' Medical Records") [Doc. 94], filed by Defendant Cam's Transport Company ("Defendant Cam's Transport") and Defendant Pierce Collins ("Defendant Collins") (together "Defendants") as well as Plaintiffs' Motion to Quash Defendants' Third-Party Subpoena for Medical Records and for a Protective Order ("Motion to Quash") [Doc. 99]. The motions are now ripe for adjudication. *See* E.D. Tenn. L.R.

7.1(a). For the reasons explained below, the Court **DENIES** the Motion to Compel, Motion for Sanctions, and Motion to Obtain Plaintiffs' Medical Records [**Docs. 68, 69, 94**] and **DENIES AS MOOT** the Motion to Quash [**Doc. 99**].

## I.    PROCEDURAL HISTORY

This case arises from a car accident on November 28, 2021, between Defendant Collins, who was driving a tractor-trailer as an employee of Defendant Cam's Transport, and Plaintiffs [Doc. 1 ¶¶ 26–27, 42–43]. Plaintiffs assert they were seriously injured as a result of the crash [*Id.* ¶¶ 64–66]. On November 14, 2022, Plaintiffs filed a Complaint, alleging negligent hiring, training, entrustment, supervision, retention, and maintenance by Defendant Cam's Transport; negligence of Defendant Collins; negligence per se; and *respondeat superior* [*See generally id.* at ¶¶ 67–101].

Defendant Collins filed his Answer to Plaintiffs' Complaint on January 9, 2023 [Doc. 13], and Defendant Cam's Transport filed its Answer on July 6, 2023 [Doc. 22].[1] On January 31, 2023, the parties filed their Rule 26(f) Report, which requested the Court set the discovery deadline for September 15, 2023 [Doc. 19 p. 2]. The Court entered a Scheduling Order, which incorporated the parties' requested discovery deadline of September 15, 2023 [Doc. 20 p. 1]. This deadline was later extended to December 15, 2023 [Doc. 24], as requested by the parties in their Joint Motion to Extend Deadlines filed on July 17, 2023 [Doc. 23 p. 3]. The parties filed a Second Joint Motion to Extend Deadlines on December 19, 2023 [Doc. 27]. Again, the Court granted the motion and rescheduled the discovery deadline for April 1, 2024, and the trial for August 27, 2024 [Doc. 30].

---

[1]    The parties agreed to an extension of time for Defendant Cam's Transport to file its Answer [Doc. 7].

The parties attended mediation on April 16, 2024, but were unsuccessful in reaching a resolution [Doc. 68 p. 3]. After mediation, the parties scheduled the remaining depositions, despite the expired discovery deadline [Doc. 45-1 p. 4].

Over two months after the discovery deadline expired and just shortly before the scheduled trial date, Plaintiffs and Defendants brought numerous discovery motions, leading District Judge Katherine Crytzer to stay this case pending the disposition of the parties' relevant motions on July 26, 2024 [Doc. 108 p. 2 (citing Docs. 31, 68, 69, 94, 99)].

## II.    STANDARD OF REVIEW

Now, the parties seek discovery, and they generally argue that the opposing party is too late. In addition, Plaintiffs seek various sanctions against Defendant Cam's Transport due to its alleged failure to preserve electronically stored information ("ESI") in anticipation of trial. The Court has considered the procedural history and the parties' arguments, and the Court finds that neither party has established good cause or excusable neglect for the discovery that they seek. Further, because Plaintiffs have not shown that any evidence has been spoliated, the Court finds sanctions are not warranted.

The Court will first address Defendants' Motion to Obtain Plaintiffs' Medical Records and Plaintiffs' related Motion to Quash, and then will turn to Plaintiffs' Motion to Compel and related Motion for Sanctions. Accordingly, the applicable standards of review are addressed below.

### A.    Discovery Motions

Generally, "absent special circumstances, motions to compel discovery filed after the close of discovery are untimely." *Fed. Ex. Corp. v. United States*, No. 08–2423, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011). "A district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery." *Willis v. New World Van*

3

*Lines, Inc.*, 123 F. Supp. 2d 380, 401 (E.D. Mich. 2000) (citing *Ginett v. Fed. Express Corp.*, 166 F.3d 1213 (6th Cir. 1998)). "In a number of cases, courts have denied discovery motions filed after the close of discovery." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642–43 (6th Cir. 2018) (citing cases). "This is especially true where the moving party had the information it needed to file the discovery motion and its late filing would prejudice the other party." *Id.* (citations omitted). This Court has followed suit, recognizing that a motion to compel filed within in days of a discovery deadline is "plainly untimely." *See Ecolab, Inc. v. Ridley*, No. 1:22-CV-050, 2023 WL 11762603, at *2 (E.D. Tenn. May 5, 2023) (collecting cases)). However, this Court has also recognized that it is within its discretion to authorize discovery beyond the close of discovery. *Id.* And some courts have noted that they "may choose to consider an untimely motion to compel on its merits if there is a good cause, or if the circumstances of the case warrant such consideration." *Sensat v. Sw. Airlines Co.*, No. 17-CV-12468, 2018 WL 11312204, at *3 (E.D. Mich. Oct. 11, 2018) (citing *Santifer v. Inergy Auto. Sys., LLC*, No. 5:15-CV-11486, 2016 WL 4011268, at *1 (E.D. Mich. July 27, 2016) and *Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.*, No. 07-cv-15324, 2010 WL 4901181, at *5 (E.D. Mich. Nov. 24, 2010)).

Generally, motions to extend the discovery deadline are governed by Rule 16(b)(4) of the Federal Rules of Civil Procedure. *Adams v. Wal-Mart Stores, Inc.*, No. 1:19-CV-00551, 2021 WL 425632, at *2 (S.D. Ohio Feb. 8, 2021). Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Five factors are relevant to the good-cause analysis: '(1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests.'" *Smigelski v. Cluley*, No. 23-3322, 2023 WL 11074139, at

*6 (6th Cir. Dec. 26, 2023) (quoting *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696 (6th Cir. 2011)).

"But when a party files a motion after the discovery deadline has passed, that motion is governed by Federal Rule of Civil Procedure 6(b)." *Id.* Rule 6(b) provides that "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). The movant must establish good cause before the Court considers excusable neglect. *Maggard v. Brookville Servs.*, No. 3:22-CV-69, 2023 WL 11760890, at *4 (E.D. Tenn. Sept. 27, 2023) (citation omitted). In determining whether excusable neglect exists, courts balance what are commonly referred to as the *Pioneer* factors as follows:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs Col v. Brunswick Assoc., Ltd. P'Ship*, 507 U.S. 380, 395 (1993)).[2] The Sixth Circuit has also stated that the "*Pioneer* factors do not carry equal weight; the excuse given for the filing must have the greatest import." *Proctor v. N. Lakes Cmty. Mental Health*, 560 F. App'x 453, 459 (6th Cir. 2014) (quoting *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010)).

### B.     Motion for Sanctions

Federal Rule of Civil Procedure 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is *lost* because a party

---

[2]     "Although *Pioneer* arose from a bankruptcy proceeding, its discussion of excusable neglect also applies to Federal Rule of Civil Procedure 6(b)." *Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 267, n.1 (6th Cir. 2009) (citing *Pioneer*, 507 U.S. at 391) (other citation omitted).

5

failed to take reasonable steps to preserve it, and it *cannot be restored or replaced* through additional discovery, the court:

**(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

**(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> **(A)** presume that the lost information was unfavorable to the party;
>
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37 (emphasis added).

"Spoliation is 'the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'" *Nat'l Lab. Rels. Bd. v. Bannum, Inc.*, 93 F.4th 973, 982–83 (6th Cir. 2024) (quoting *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004)). "Depending on a finding of an intentional deprivation of evidence, courts may proceed under either Rule 37(e)(1) or Rule 37(e)(2) in imposing a sanction for a party's failure to preserve ESI; however, as a threshold matter, Rule 37(e) requires a showing that (1) the ESI was lost in 'anticipation or conduct of litigation,' such that the party had a duty to preserve it; (2) the ESI was lost after the party 'failed to take reasonable steps to preserve it'; and (3) the lost ESI 'cannot be restored or replaced through additional discovery.'" *Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2021 WL 4810498, at *5 (E.D. Mich. Oct. 15, 2021) (citation omitted). "When imposing sanctions under Rule 37(e)(1), "the range of curative measures is quite broad" and "much is entrusted to the court's discretion." *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3, 2017 WL 5479932, at *14 (E.D. Tenn. Nov. 14, 2017) (quoting Fed. R. Civ. P. 37(e) advisory committee's note).

6

III.    **DEFENDANTS' MOTION TO REOPEN DISCOVERY FOR PLAINTIFFS' MEDICAL RECORDS**

Defendants seek to reopen discovery in order to obtain Mr. and Mrs. Allen's medical records from Norton Clark Hospital in Jeffersonville, Indiana, related to a separate car accident that occurred on July 5, 2022 ("July 2022 Accident") [Doc. 94 p. 1].

A.    **Relevant Background**

Following the underlying incident in this case, on July 5, 2022, Mr. and Mrs. Allen, along with R.A., were involved in a car accident in Indiana [Doc. 94-2 p. 2; Doc. 94-3 p. 2; Doc. 94-6 p. 2]. Mrs. Allen suffered injuries and was taken to a local hospital by ambulance [Doc. 94-6 p. 2; Doc. 94-2 p. 2]. Mr. Allen was not taken to the hospital by ambulance after the accident, but his shoulder was injured and later required surgery [Doc. 94-3 p. 2; Doc. 94-6 p. 2].

On May 8, 2023, Plaintiffs responded to Defendant Cam's Transport's First Set of Interrogatories [Docs. 94-2 & 94-3]. Defendants' interrogatory no. 5 asked whether Plaintiffs had suffered any additional injuries after the November 2021 car accident [Doc. 94-2 p. 2; Doc. 94-3 p. 2]. Mrs. Allen answered that she had been in another car accident on July 5, 2022, which exacerbated her injuries [Doc. 94-2 p. 2]. Mr. Allen answered that he injured his shoulder in the July 2022 Accident requiring surgery [Doc. 94-3 p. 2]. Defendants requested "the name and address of each hospital or clinic where [Plaintiffs] received treatment for any injury sustained in the Wreck and the inclusive dates [they] were treated," and Plaintiffs answered with a list of medical providers [Doc. 94-2 p. 2; Doc 94-3 p. 2]. Defendants also asked Plaintiffs to "[s]tate the name . . . of each physician . . . or related consultant whom [they] consulted or [who] treated [them] in the past ten (10) years for any problem and give the date or inclusive dates of treatment and reason for or nature of the treatment" [Doc. 94-2 p. 3; Doc 94-3 p. 3]. Plaintiffs objected to this question, claiming that it was overly broad, unduly burdensome, irrelevant, not proportional to the

7

needs of the case, nor reasonably calculated to lead to the discovery of admissible evidence [Doc. 94-2 p. 3; Doc 94-3 p. 3].  "Notwithstanding the objection," Plaintiffs stated that "an Agreed Order has been provided to enable Defendants to obtain medical, employment, and educational records" and gave a list of providers they had seen in "in past years" [Doc. 94-2 p. 3; Doc 94-3 p. 3].[3]

On January 22, 2024, Defendants deposed Mrs. Allen [Docs. 94-4 & 98-1 (both excerpts from the transcript of Mrs. Allen's deposition)].  When asked whether she had seen anyone else other than "Dr. Duvall" and Dr. Garrett J. Jackson ("Dr. Jackson") after the accident on July 5, 2022, Mrs. Allen answered "No" [Doc. 94-4 pp. 2, 4].  In discussing her injuries from the July 2022 Accident, she testified that "[she] was concerned that everything was still in place from [her surgery], and that . . . was probably [her] biggest reason for going to the hospital for [the July 2022] wreck was just to make sure everything was okay" [Doc. 98-1 p. 8].

Mr. Allen was also deposed on January 22, 2024 [Doc. 98-2].  He testified that, after the July 2022 Accident, his shoulder was injured and that "[he] kept complaining of this at the hospital. [He] had a bad headache[,] but they found nothing, and the headache went away eventually" [*Id.* at 8–9].

On January 26, 2024, Defendants deposed Dr. Jackson, one of Mrs. Allen's doctors [Doc. 98-3].  He testified that Mrs. Allen had a follow-up appointment with him on July 7, 2022, that she had scheduled prior to her July 2022 Accident [*Id.* at 6].  At that appointment, she reported that some of her symptoms had returned following the accident on July 5 [*Id.* at 7].

R.A., the minor child of Mr. and Mrs. Allen, was deposed on June 28, 2024 [Doc. 94-6].  During the deposition, Defendants asked R.A. about the July 2022 Accident [*Id.* at 2].  R.A.

---

[3]     The parties did not submit this "Agreed Order" nor reference the terms of the order.

8

testified that his parents were injured during that accident and that his mother left the scene of the accident in an ambulance [*Id.*].[4]

## B. Positions of the Parties

Defendants ask the Court to reopen the discovery deadline so that they may subpoena Mr. and Mrs. Allen's medical records from Norton Clark Hospital in Jeffersonville, Indiana [Doc. 94 p. 1].[5]  In support of their request, Defendants argue that Mrs. Allen responded untruthfully to Defendants' Interrogatory [Doc. 94-2] as well as during her deposition [Doc. 94-4], which indicated that Defendants had received all of her pertinent medical records [Doc. 94 pp. 6–7].  In fact, Defendants argue, they had not been aware that Mrs. Allen was taken to Norton Clark Hospital following the July 2022 Accident until they obtained the police report from the accident[6] and asked R.A. about the accident during his deposition on June 28, 2024 [*Id.*].  Defendants assert that Plaintiffs will not be prejudiced by this discovery because they are Plaintiffs' own medical records; this will not delay the trial as Defendants anticipate receiving these documents by July 29, 2024; Defendants' delay in bringing this motion is excusable because it was caused by Plaintiffs' untruthfulness; and Defendants have acted in good faith in subpoenaing these documents within a few weeks of learning of their existence [*Id.* at 8–9].

---

[4]     On April 23, 2024, Plaintiffs filed a Motion to Quash the Deposition of R.A., the minor child involved in the November 2021 accident [Doc. 37], which was previously scheduled to take place on April 24, 2024 [Doc. 37-1].  Defendants replied in opposition [Doc. 45].  The Court denied Plaintiffs' motion on June 20, 2024, and provided a brief, ten-day extension of the discovery deadline from the date of the Order for Defendants to depose R.A. [Doc. 52].

[5]     On July 11, 2024, Defendants sent Norton Clark Hospital a subpoena for the medical records of Mr. Allen [Doc. 94-6] and Mrs. Allen [Doc. 94-7].

[6]     Defendants do not mention when they obtained the police report for the July 2022 Accident but note that they supplemented their written discovery and produced the report on June 19, 2024 [Doc. 94 p. 6].

9

Plaintiffs respond that the delay was within the Defendants' control because Plaintiffs disclosed the July 2022 Accident in May 2023 in their interrogatory responses and Mrs. Allen stated during her deposition in January 2024 that she went to the hospital after that accident [Doc. 98 pp. 1–3]. Further, Plaintiffs argue that Defendants cannot meet their burden to justify reopening discovery because Mrs. Allen's interrogatory response levied several objections to the interrogatory requesting the identification of physicians she had seen or consulted for any reason over the past ten years but nevertheless listed the treating physicians she saw pertaining to the November 2021 accident [*Id.* at 5–8]. Additionally, Plaintiffs argue that Defendants knew Mrs. Allen went to the hospital three months before filing the instant Motion to Obtain Plaintiffs' Medical Records, and Defendants deposed Mrs. Allen's physician "using medical records that discussed and referenced the [July 2022,] wreck" [*Id.* at 7]. Finally, Plaintiffs explain that, in the context of the interrogatory, Mrs. Allen reasonably did not consider the doctors she saw during her emergency room visit to be "treating physicians" [*Id.* at 7–8].

Defendants replied, arguing that Mrs. Allen's testimony that she went to the hospital after the accident was ambiguous as records show that she saw Dr. Jackson after the accident, she was asked multiple times what providers she saw after the accident, and she consistently replied that she only saw Dr. Jackson and Dr. Duvall [Doc. 103 pp. 1–2].

C.    **Analysis**

The Court finds that the discovery period has expired, and Defendants have not shown good cause or excusable neglect to reopen it. Good cause is measured by the moving party's due diligence in attempting to meet the deadline. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citation omitted). And here, Defendants have not shown their due diligence. First, Defendants claim that they learned of this discovery when they obtained the police report from the

10

accident[7] and asked R.A. about the accident during his deposition on June 28, 2024, but Defendants knew that Mrs. Allen went to the hospital for the July 5 Accident in May 2023 when they received Mrs. Allen's interrogatory responses. This factor weighs against Defendants' request. Second, while this discovery appears to be directed toward damages, the Court notes that the discovery period was over thirteen months. Indeed, the Court granted two extensions so the parties could complete the discovery [*See* Docs. 24 & 30]. With respect to whether the moving party was dilatory, the Court notes that in this instance, Defendants could have sought these records prior to the discovery deadline—or at least challenged Plaintiffs' objections to the discovery requests seeking medical records via Judge Crytzer's informal discovery dispute procedure [*See* Docs. 20, 24, 30]. With respect to the final factor—whether the adverse party was responsive to discovery requests—it appears that Plaintiffs were responsive [*See* Docs. 94-2 & 94-3].

In analyzing good cause, the overall consideration is whether Defendant acted with due diligence. After weighing the factors above, the Court finds they were not. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505, 2021 WL 6332794, at *5 (E.D. Tenn. Sept. 28, 2021) ("[R]egardless of whether Rule 6 or Rule 16 is more applicable, the movant must nonetheless demonstrate 'good cause,' a standard enumerated in both rules." (citing *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 241 (E.D. Ky. 2018) ("But regardless of which rule applies, the movant must first show 'good cause.'")).

But even if Defendants could demonstrate good cause, the *Pioneer* factors do not weigh in favor of granting their request. As to the first *Pioneer* factor, Defendants argue that Plaintiffs are not prejudiced by this evidence because the documents sought are Plaintiffs' own medical records. Plaintiffs do not dispute this point in their response. *But see Reiner v. Nishimori*, No. 3:15-0241,

---

[7]        *See supra* note 6.

11

2017 WL 11476386, at *1 (M.D. Tenn. Feb. 15, 2017) ("There is danger of prejudice to the Plaintiff if discovery has to be reopened and the case cannot be tried as scheduled. This case is approaching two years old and should be resolved as scheduled."). The remaining factors, however, weigh against Defendants' request, largely for the same reasons as above. *Maggard*, 2023 WL 11760890, at *5 (explaining that several of the *Pioneer* factors "overlap with the good cause analysis") (quoting *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 242 (E.D. Ky. 2018)). For instance, with respect to the second factor—the length of the delay and its potential impact on judicial proceedings—Defendants filed their motion months after the discovery deadline and over a year after they had learned Mrs. Allen went to the hospital following the July 5 Accident. In light of this discovery issue, along with others, Judge Crytzer stayed this case. The third and fourth factors also weigh against granting Defendants' request because they have not provided a sufficient reason for requesting this discovery well after the deadline, and the delay in seeking this discovery was within their control. As to the final factor, Plaintiffs argue that Defendants' failure to note that Mrs. Allen testified that she visited the hospital following the July 2022 Accident indicates bad faith [Doc. 96 p. 8]. While the Court declines to find bad faith based on this argument, "under the excusable neglect standard, an absence of bad faith is not dispositive." *Sompo Am. Ins. Co. v. FCA US LLC*, No. 20-10734, 2022 WL 1553791, at *4 (E.D. Mich. May 17, 2022) (citation omitted).

The Court finds these factors, on the whole, weigh against granting Defendants' request, and therefore, it will not reopen the discovery deadline. Accordingly, Plaintiffs' Motion to Quash [**Doc. 99**] is **DENIED AS MOOT** in light of this holding.

## IV.    PLAINTIFFS' MOTION TO COMPEL

In their Motion to Compel, Plaintiffs seek to reopen the discovery deadline to compel the production of documents related to the Hours-of-Service Safety Audit reports ("Hours-of-Service Audit") and the Canal Insurance Accident Checklist ("Canal Accident Checklist") [Doc. 68].[8]

### A.    Relevant Background

On July 20, 2023, Defendant Cam's Transport responded to Plaintiffs' First Request for Production of Documents ("RFP") [Doc. 68-7; Doc. 81-1].  In relevant part, Defendant Cam's Transport objected to producing the Electronic Control Module ("ECM")[9] documents related to the accident, in part, because it would require them to "retrieve electronically stored data or other technical information not readily accessible" and stated that it otherwise did not have any responsive documents [Doc. 68-7 p. 2].  Similarly, Defendant Cam's Transport objected to Plaintiffs' request for documents related to the Hours-of-Service Audit for the driver involved in the accident, Defendant Collins, and stated that the request was overly broad, vague, ambiguous, not relevant, and duplicative of prior requests [*Id.* at 3–4].  Finally, Defendant Cam's Transport objected to Plaintiffs' request that it produce "[d]ocuments identified as late filed exhibit to any deposition" [*Id.* at 6].  Defendant Cam's Transport argued that this request was premature, improper, and not contemplated by or procedurally proper under the Federal Rules of Civil Procedure [*Id.*].  It instructed that "Defendant will produce documents only as permitted or

---

[8]    Plaintiffs' motion seeks additional documents, but they subsequently withdrew the request for those documents in their Reply Brief [Doc. 87 pp. 1–2].  Accordingly, the Court will only address the remaining requests.

[9]    Plaintiffs' expert asserts that "Defendants' tractor-trailer was equipped with a Caterpillar 'Electrical Control Module' which . . . records data pertaining to the truck's operation and data related to crash events, such as speed; brake use; clutch use; engine RPM; engine load; cruise control; data plot; throttle position; and, fault codes" [Doc. 96-1 ¶ 5].

13

required under the Federal Rules of Civil Procedure" and "to the extent that any counsel makes a request for late-filed exhibits at a deposition, said counsel can submit a written request for production" [*Id.*].

On January 2, 2024, Plaintiffs sent Defendant Cam's Transport a Notice *Duces Tecum* of Video Deposition of the Corporate Representative (Safety) of Cam's Transport Company, scheduling the deposition of Defendant Cam's Transport's first corporate representative, Matthew Cammarasana ("Mr. Cammarasana") on January 24, 2024 [Doc. 68-1 p. 1]. The notice also requests that certain documents be produced at the deposition, including "[t]he originals, if available, and if not, then copies of any and all documents, writings, photographs, videotapes, statements or other items identified, or identified but not produced in the deposition (all late-filed exhibits), to specifically include electronically stored information (ESI) such as emails, intranet documents, etc." [*Id.* at 2]. Based on Mr. Cammarasana's testimony, Plaintiffs identified five documents, which they refer to as "late-filed exhibits," that Mr. Cammarasana mentioned or otherwise alluded to in his testimony, including those currently sought in the Motion to Compel— all correspondence from the Federal Motor Carrier Safety Administration ("FMCSA") regarding the Hours-of-Service Audit and the Canal Accident Checklist (together "Late-Filed Exhibits") [Doc. 68-2 p. 4 (Deposition Transcript of Mr. Cammarasana)]. Regarding correspondence from the FMCSA, Mr. Cammarasana testified that Defendant Cam's Transport was under audit by the FMCSA at the time of the deposition because of Defendants' logbooks [*Id.* at 18]. As explained by Mr. Cammarasana, Defendant Cam's Transport was

> kind of, like, slow to the race to figuring out how to keep our logbooks straight, and I wasn't doing a great job at correcting the issues with the logs. So basically when they did our audit, because obviously this incident and, you know, the out of services because of the logbooks, because I wasn't the best at it. I was trying to do my job as much as I could, but I was also driving the trucks.

> So it was kind of hard to, like, do everything; but, you know, I was
> on the phone with the drivers constantly, you know.

[*Id.*].  Mr. Cammarasana stated that Defendant Cam's Transport would have whatever paperwork or correspondence the FMCSA provided to it [*id.* at 19] but was not sure if it had any data on Defendant Collins's speed on the day of the accident although Defendants were trying to get data from the Electronic Logging Device ("ELD") system [*id.* at 24; *see also* Doc. 83 p. 10].  Mr. Cammarasana testified that "the day of the wreck [he] knew [litigation] was coming" because Mr. Allen said "he was going to sue the f*** out of [Mr. Cammarasana]" [Doc. 68-2 p. 25].  After the accident, Defendant Cam's Transport gathered information and data identified on the "cheat sheet on the FMCSA's website" and the Canal Accident Checklist [*Id.*].  Mr. Cammarasana did not know whether the ECM data was downloaded and was not sure whether there was a hard copy of the Canal Accident Checklist [*Id.* at 27–28].  Following Mr. Cammarasana's deposition, on May 7, 2024, Plaintiffs sent a letter to Defendant Cam's Transport requesting that they produce additional discovery responses as well as the Late-Filed Exhibits marked during the deposition [Doc. 68-3].

On May 10, 2024, Plaintiffs deposed Defendant Cam's Transport's second Rule 30(b)(6) corporate representative, Holly Cammarasana ("Mrs. Cammarasana") [Doc. 68-4 (Deposition Transcript of Mrs. Cammarasana)].  Mrs. Cammarasana testified that Defendant Collins was told to monitor his hard braking in 2019 because the software flagged him [*Id.* at 9].  However, she explained that this was because the hard braking threshold was set to the minimal requirements "where it would set it off very rapidly" and that Defendant Cam's Transport later learned that it needed to adjust the sensitivity threshold of the monitor [*Id.* at 9, 14].  Mrs. Cammarasana noted that she keeps reports on the fuel and toll receipts that a driver accumulates on a trip and that she would have the hard copies of the 2021 fuel stops in a storage unit [*Id.* at 17–19].  She also testified

that Loves gas station keeps an electronic fuel report of the transactions but was unsure if they would still have transactions from 2021 [*Id.* at 18–19].

Defendant Cam's Transport emailed Plaintiffs on May 20, 2024, requesting that they format their request for the Late-Filed Exhibits in an RFP [Doc. 68-5], then later, on June 14, 2024, sent a letter to Plaintiffs objecting to producing the Late-Filed Exhibits [Doc. 68-6]. Specifically, Defendant Cam's Transport argued that documents related to the Hours-of-Service Audit would be unduly burdensome to produce as those documents "are not easily accessible or relevant" and the Canal Accident Checklist is not relevant [*Id.* at 2].

### B. Positions of the Parties

Plaintiffs now seek documents related to the Hours-of-Service Audit and Canal Accident Checklist [Doc. 68 p. 3]. Defendants argue that Plaintiffs' motion is untimely [Doc. 81 pp. 7–8], no special circumstances warrant reopening discovery [*id.* at 9–10], they have consistently objected to producing Late-Filed Exhibits throughout this litigation [*id.* at 10–13], and they cannot produce the documents Plaintiffs seek [*id.* at 14–21]. In their Reply Brief, Plaintiffs assert that Defendants have not shown that the relevant documents are unavailable and contend that the documents exist in electronic format and can be produced with minimal effort [Doc. 87 p. 3].

### C. Analysis

Under the circumstances presented in this case, the Court finds that the Motion to Compel is untimely and Plaintiffs have not established good cause or excusable neglect with respect to their request to modify the scheduling order. Good cause is measured by the moving party's due diligence in attempting to meet the deadline. *Leary*, 349 F.3d at 906 (citation omitted). And here, Plaintiffs have not shown their due diligence. First, Plaintiffs claim that their delay in bringing the Motion to Compel was due to their "reasonable understanding" that Defendants were going to

produce this documentation.  However, on July 20, 2023, Defendants objected to producing these documents [Doc. 68-7].  This factor weighs against Plaintiffs' request.  Second, while this discovery appears to be directed toward liability, the Court notes that the discovery period was over thirteen months.  Indeed, the Court granted two extensions so the parties could complete the discovery [*See* Docs. 24 & 30].  With respect to whether the moving party was dilatory, the Court notes that in this instance, Plaintiffs could have sought these records prior to the discovery deadline—or at least challenged Defendants' objections to the discovery requests seeking medical records via Judge Crytzer's informal discovery dispute procedure [*See* Docs. 20, 24, 30].  With respect to the final factor—whether the adverse party was responsive to discovery requests—it appears that Defendants were responsive [*See* Docs. 94-2 & 94-3].

In analyzing good cause, the overall consideration is whether Plaintiffs acted with due diligence.  After weighing the factors above, the Court finds they did not. *See Adkisson*, 2021 WL 6332794, at *5 (explaining the good cause standard) (citation omitted).

But even if Plaintiffs could establish good cause, the Court finds that the *Pioneer* factors weigh against denying their request.  With respect to the first *Pioneer* factor, Plaintiffs argue that producing the Late-Filed Exhibits would not "unduly prejudice the [D]efendants" because they requested these documents in January 2024—well in advance of the discovery dispute deadline [Doc. 68 p. 13].  Defendants disagree, asserting that "[r]eopening discovery at this time would hinder the progress of this case and serves only to harass Defendants, who have produced every nonprivileged, relevant document in their possession" [Doc. 81 p. 10].  Indeed, one court has noted that a party is prejudiced by reopening the deadlines and not trying the case as scheduled.  *See Nishimori*, 2017 WL 11476386, at *1.  Regardless of prejudice, however, the Court finds that the second, third, and fourth factors weigh against Plaintiffs' request, largely for the same reasons as

above. *See Maggard*, 2023 WL 11760890, at *5. For instance, with respect to the second factor—the length of the delay and its potential impact on judicial proceedings—Plaintiffs knew of this discovery approximately a year ago, and Judge Crytzer stayed this proceeding, in part, because of this outstanding discovery request. Additionally, Plaintiffs had notice of Defendants' objections to producing the Late-Filed Exhibits well before the close of discovery. Under these circumstances, the Court finds the third and fourth *Pioneer* factors, the reason for the delay and whether the delay was within Plaintiffs' reasonable control, weigh against granting their request. And, like the above finding, while there is no evidence of bad faith, this factor is not dispositive. *See Sompo Am. Ins. Co.*, 2022 WL 1553791, at *4.

The Court finds these factors, on the whole, weigh against granting Plaintiffs' request, and therefore, it will not reopen the discovery deadline.

## V.      MOTION FOR SANCTIONS

As previously noted, Plaintiffs seek various sanctions against Defendant Cam's Transport due to its alleged failure to preserve ESI in anticipation of trial, specifically the ECM data and hard braking ESI related to the accident [Doc. 69].

### A.      Relevant Background

The accident between Plaintiffs and Defendants occurred on November 28, 2021 [Doc. 83-1 (Tennessee Electronic Traffic Crash Report)]. On February 9, 2022, Defendants received a letter from an attorney with the firm, Truitt Ray Law,[10] stating that her "firm represents [Mr. and Mrs. Allen] on their claim for compensation for injur[i]es received in an auto collision" and instructing that all medical claims and contact regarding this claim should be directed to her attention [Doc.

---

[10]      Neither this attorney nor the firm with which she is associated are counsel of record for Plaintiffs in this matter.

18

83-3]. Almost one year after the accident, on November 14, 2022, Plaintiffs—through counsel with Truck Wreck Justice PLLC—filed the instant Complaint [Doc. 1]. Defendant Collins filed his Answer on January 9, 2023 [Doc. 13], and Defendant Cam's Transport filed its Answer on July 5, 2023 [Doc. 22].[11] Both Defendants asserted unavoidable accident and sudden emergency as an affirmative defense to Plaintiffs' claims [*See* Doc. 13 p. 14; Doc. 22 p. 16].

In its response to Plaintiffs' RFP, Defendant Cam's Transport objected to producing ECM data "to the extent it requires Defendant to retrieve electronically stored data or other technical information not readily accessible," as well as for other stated reasons [Doc. 69-1 p. 2]. Defendant Cam's Transport also asserted that it "does not have any documentation responsive to this request" [*Id.*].

As previously noted, during Mr. Cammarasana's deposition on January 24, 2024, he testified that "the day of the wreck [he] knew this [lawsuit] was coming" because "Mr. Allen . . . [told him] he was going to sue the f*** out of [him]" [Doc. 69-2 p. 12]. He recapped that on the day of the wreck, Defendant Cam's Transport gathered various documents related to the crash as instructed by the company's insurance provider and the FMCSA, but he was not certain whether anyone downloaded the ECM data [*Id.* at 12–13, 15]. After the accident, Defendant Cam's Transport repaired the truck and placed it back on the road [*Id.* at 15]. Finally, Mr. Cammarasana explained that Defendant Cam's Transport kept an electronic record of hard braking through an application called KeepTruckin, now called Motive ("the App"), and that to his knowledge this data had not been erased [*Id.* at 8–9].

Mrs. Cammarasana testified that, in 2019, Defendant Collins had been informed to pay attention to hard braking but explained that his hard braking issues were related to the sensitivity

---

[11]     *See supra* note 1.

19

of the App [Doc. 69-3 p. 6]. She further noted that in September 2021, Defendant Collins had no hard braking issues despite the fact that Defendant Cam's Transport did not learn of the threshold sensitivity issue with the App until 2024 [*Id.* at 6–7]. In her written declaration, Mrs. Cammarasana states that following her deposition, she searched for but did not find any of Defendant Collins's hard braking reports from the App [Doc. 86-6 ¶ 4]. She investigated whether Defendant Cam's Transport was able to pull this data from the App and learned that they were not able to do so for employees who no longer work for Defendant Cam's Transport, which includes Defendant Collins, who was terminated on February 17, 2023, "for reasons unrelated to the events of this incident" [*Id.* ¶¶ 4–5]. According to Mrs. Cammarasana, Defendant Cam's Transport still owns the subject tractor and engine, although they conducted repairs on it after the accident [*Id.* ¶ 6]. She stated that Defendant Cam's Transport was not aware of Plaintiffs' current legal representation until the Complaint was filed, never received any communications requesting that Defendant Cam's Transport preserve the tractor or certain documents, and that she and Mr. Cammarasana do not know how to download and preserve ECM data but believe an expert is needed to do so [*Id.* ¶¶ 8–9]

### B. Positions of the Parties

Plaintiffs move the Court to enter sanctions against Defendant Cam's Transport under Rule 37 for failing to preserve electronic evidence, specifically the ECM data and hard braking ESI related to the accident [Doc. 69 pp. 1, 4–5]. Plaintiffs argue that Defendant Cam's Transport knew about the pending litigation as early as the day of the accident when Mr. Allen told Mr. Cammarasana that he was going to sue him and that this created a duty to preserve evidence in anticipation of litigation [*Id.* at 10]. They assert that this evidence is relevant to Plaintiffs' negligence claims, as well as both Defendants' unavoidable accident and sudden emergency

affirmative defenses [*Id.*].  Plaintiffs contend that the ECM data was reset and cannot be recreated "due to Defendant Cam's Transport's failure to take reasonable steps to preserve the data before subsequently repairing the truck and returning it to service" [*Id.* (citations omitted)].  As for Defendant Collins's hard braking ESI, Plaintiffs argue that this data pertains to and would be conclusive evidence related to the parties' dispute over whether Defendant Collins was speeding and/or falsified his logbooks [*Id.* at 12].  Without this data, Plaintiffs maintain that they are prejudiced because Defendants are free to craft a narrative that best fits their affirmative defenses [*Id.*].  In support, they assert that Defendant Cam's Transport has already attempted to minimize this data by asserting that Defendant Collins's hard braking data is irrelevant since the threshold was too sensitive and included red flags for braking that were not hard brakes [*Id.* at 12–13].  Plaintiffs request the Court impose the following sanctions:

> (1) That Defendant Cam's Transport be compelled to produce a copy of the "accident checklist" and any/all other documents it purportedly relied upon to collect and preserve evidence on the date of the crash;

> (2) That Defendant Cam's Transport be compelled to perform a search for, and produce any, ESI capable of retrieval regarding Defendant Collins "hard braking," the "red flags" referenced in deposition testimony, and all electronic data regarding the tractor in the moments before the crash including, but not limited, speed and braking;

> (3) That Defendant Cam's Transport be compelled to produce any/all communications with the Federal Motor Carrier Safety Administration regarding the "hours-of-service" audit that, in part, arose from this crash;

> (4) That the Court strike the affirmative defense of "sudden emergency";

> (5) That Defendants be prohibited from putting on evidence of "sudden emergency";

> (6) That Defendants be prohibited from presenting testimony and evidence excusing or minimizing Defendant Collins' history of

> "hard braking" due to a purported errant software setting that was not discovered for approximately five years; and
>
> (7) That Plaintiffs be permitted to present evidence and testimony of Defendant Cam's Transport's failure to preserve and download key electronic data from the truck and explain, through its expert, the significance of the data that was not preserved.

[*Id.* at 16 (footnote omitted)]. To the extent that any of these sanctions require a "heightened culpable state of mind," Plaintiffs suggest "the Court may wish to reserve ruling on whether the most severe sanctions should apply until Defendant Cam's Transport has an opportunity to provide a credible explanation as to why it failed to preserve and download the electronic data" [*Id.* at 15 (footnote omitted)].

Defendants respond that Plaintiffs filed their motion after the close of the discovery deadline without justifying the delay, and therefore, their motion should be denied as untimely [Doc. 83 p. 7]. They contend that Defendant Cam's Transport did not have a duty to preserve evidence until the Complaint was filed because no reasonable motor carrier would have foreseen litigation pertaining to this accident as it did not result in any serious injuries and that threats of litigation made in the heat of the moment do not trigger that duty [*Id.* at 9–13]. Defendants note that the February 9, 2022 letter did not request any data be preserved and Plaintiffs have never requested an opportunity to inspect the trailer or to download the data [*Id.* at 13]. Even if they had a duty to preserve evidence, Defendants argue that they did not take any action to destroy the ECM or hard braking data [*Id.*]. They maintain that, as a small business, Defendant Cam's Transport had to repair the relevant trailer after the accident and put it back on the road but that it is possible that the pertinent ECM data remains accessible in the engine [*Id.* at 14]. To the extent that any data has been erased, Defendants assert that it occurred prior to any duty to preserve [*Id.* at 15]. Defendants also argue that Plaintiffs have not shown any prejudice because the hard braking data

is irrelevant to this case, is otherwise not admissible at trial per Federal Rule of Evidence 404(b), and that any prejudice is Plaintiffs' fault because they never requested or arranged to download the ECM data nor subpoenaed Motive for the hard braking data [*Id.* at 17–20]. Further, Defendants maintain that they did not have the requisite intent to deprive Plaintiffs of this evidence [*id.* at 21–22] but, instead, Defendant Cam's Transport acted as a reasonable motor carrier would by preserving the documents as instructed by their insurance carrier and the FMCSA regulations [*id.* at 23]. Finally, Defendants object to the sanctions Plaintiffs seek, agree to produce a copy of the Canal Accident Checklist for the Court's review only, note they have already searched for responsive ESI documents and did not find any, and argue that Plaintiffs have not established that the evidence they seek has been spoliated [*Id.* at 24–25].

Plaintiffs replied that spoliation is an evidentiary issue, not a discovery issue, and therefore, they were not required to file the instant motion by the close of the discovery deadline [Doc. 96 p. 3]. They assert that Defendant Cam's Transport reasonably anticipated litigation as evidenced by Defendant Cam's Transport immediately collecting some evidence and claiming the Canal Accident Checklist was created in anticipation of litigation [*Id.* at 5–7]. Further, Plaintiff maintains that Defendant Cam's Transport argument that ESI may still exist is meritless [*id.* at 9] and that, in any event, Defendant Cam's Transport did not fulfill their duty to preserve ESI and were ignorant of the need to do so [*id.* at 7–8]. According to Plaintiffs' expert, Billy Weaver, the ECM data is most likely destroyed because the system is set to delete previous hard stops with each subsequent one [Doc. 96 pp. 1–2, 8–9; Doc. 96-1 (Declaration of Billy Weaver)]. They also assert that Defendant Cam's Transport possessed the hard braking data for at least ninety days between the time the Complaint was filed and when Defendant Collins was terminated [Doc. 96 pp. 9–10]. Finally, Plaintiffs maintain that the Court has "a wide array of curative measures" available and

"urge the Court to [level the playing field] to prevent Defendants from benefitting from the failure to preserve this critical evidence" [*Id.* at 10 (citation omitted)].

### C. Analysis

The Court declines to impose the sanctions Plaintiffs seek because they have not proven that the evidence has been destroyed as required under Rule 37 in order to issue sanctions. *See Katebian v. Missaghi*, No. 18-13379, 2020 WL 1285638, at *7 (E.D. Mich. Mar. 18, 2020) ("Notably, Rule 37(e) only applies if the information *cannot be restored or replaced through additional discovery*."). Regarding the ECM data from the accident, Plaintiffs have submitted a declaration from their expert who believes the ECM data "would have been overwritten shortly after Defendant Cam's Transport placed the tractor-trailer back into service and no longer exists" [Doc. 96-1 p. 2]. However, without having inspected the engine, it is not certain that this evidence has been destroyed or is otherwise unrecoverable.[12] As to the hard braking data, it is clear from the parties' filings that this data likely still exists with a third party, Motive, but that Defendant Cam's Transport cannot download the data since Defendant Collins is not an employee.[13] However, neither party contends that this evidence has been destroyed. Accordingly, Plaintiffs are not able to show that "the lost ESI 'cannot be restored or replaced through additional discovery,'" *Prudential Def. Sols., Inc*, 2021 WL 4810498, at *5 (citation omitted), and as the Sixth Circuit recently held, "[a]bsent evidence that these records were actually spoiled, spoliation

---

[12]    Plaintiffs requested this data, and Defendant Cam's Transport objected on a variety of bases and also stated that "Defendant does not have any documentation responsive to this request" [*See* Doc. 69-1 p. 2]. However, neither party has indicated that they engaged in a meet-and-confer or requested an informal discovery meeting with the Court, nor filed an appropriate motion until after the discovery deadline had expired [*See* Doc. 20 p. 2 (instructing that, prior to filing a motion to compel, the parties are to attempt to meet-and-confer regarding dispute and, then, to contact the Court to schedule a telephone conference); Doc. 24 p. 3 (same); Doc. 30 p. 2 (same)].

[13]    The parties do not address whether Defendant Collins has the ability to pull his hard braking data from the App for the relevant time period.

24

sanctions are inappropriate." *Nat'l Lab. Rels. Bd.*, 93 F.4th at 983. Therefore, the Court will not impose the spoliation sanctions Plaintiffs seek at this time. *See Katebian*, 2020 WL 1285638, at *7 ("Notably, Rule 37(e) only applies if the information *cannot be restored or replaced through additional discovery*."); *Elvis Presley Enters., Inc. v. City of Memphis*, No. 2:18-CV-02718, 2020 WL 4015476, at *15 (W.D. Tenn. July 16, 2020) (same); *ACT, Inc. v. Worldwide Interactive Network, Inc.*, No. 3:18-CV-186, 2020 WL 4016241, at *4 (E.D. Tenn. July 16, 2020) (same); *Int'l Unions, Sec. Police & Fire Pros. of Am. v. Maritas*, No. 2:19-CV-10743, 2022 WL 17828378, at *5 (E.D. Mich. Sept. 22, 2022) ("Rule 37(e) applies only when the lost ESI cannot be restored or replaced[.]"), *report and recommendation adopted*, No. 2:19-CV-10743, 2022 WL 17826495 (E.D. Mich. Sept. 30, 2022); *Buddenberg v. Est. of Weisdack*, No. 1:18-CV-00522, 2024 WL 159001, at *70 (N.D. Ohio Jan. 16, 2024) ("Even then, 'the initial focus should be on whether the lost information can be restored or replaced through additional discovery.'" (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment)).

## VI.     CONCLUSION

For the reasons explained, the Court **DENIES** the Motion to Compel, Motion for Sanctions, and Motion to Obtain Plaintiffs' Medical Records [**Docs. 68, 69, 94**] and **DENIES AS MOOT** the Motion to Quash [**Doc. 99**].

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge